1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Julia K. Venditti (State Bar No. 332688)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
        jvenditti@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY 10019
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: fklorczyk@bursor.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

PSALM POLLOCK, individually and on behalf of all others similarly situated,

                              Plaintiff,

        v.

VIMEO.COM, INC.,

                              Defendant.

Case No. **'23 CV 0602 L    BLM**

**CLASS ACTION COMPLAINT**

(1) UNFAIR COMPETITION
(2) CONVERSION
(3) FALSE ADVERTISING
(4) VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
(5) UNJUST ENRICHMENT / RESTITUTION
(6) NEGLIGENT MISREPRESENTATION
(7) FRAUD

**DEMAND FOR JURY TRIAL**

Plaintiff Psalm Pollock ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Vimeo.com, Inc. ("Vimeo" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## INTRODUCTION

1.     This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme with respect to its subscription plans for Vimeo-branded products and services that are available exclusively to consumers who enroll in Defendant's auto-renewal membership programs (collectively, the "Vimeo Subscriptions," enumerated below) through its website at https://www.vimeo.com/ (the "Vimeo Website"). Defendant is a leading industry video hosting, sharing, and streaming platform that offers free memberships and paid subscriptions that allow consumers to view, make, manage, upload, and share video content. The paid Vimeo Subscriptions provide consumers with access to a broader range of features than is available through a free membership, including exclusive access to tools and features for video creation, editing, and broadcasting. Relevant to Plaintiff's allegations, when consumers sign up for the Vimeo Subscriptions, Defendant actually enrolls consumers in a program that automatically renews the Vimeo Subscriptions from month-to-month or year-to-year and results in monthly or annual charges to the consumer's credit card, debit card, or third-party payment account ("Payment Method"). In doing so, Defendant fails to provide the requisite disclosures and authorizations required to be made to California consumers under California's Automatic Renewal Law ("ARL"), Cal. Bus. Prof. Code §§ 17600, *et seq.*

2.     Through the Vimeo Website, Defendant markets, advertises, and sells paid memberships to the Vimeo Subscriptions, which include, without limitation, the

following automatic renewal programs: Vimeo Starter[1]; Vimeo Standard[2]; and Vimeo Advanced.[3]  These subscription offerings are collectively referred to herein as the "Vimeo Subscriptions."

3.     Consumers can sign up for Defendant's Vimeo Subscriptions through the Vimeo Website, and, in some cases, the Vimeo App(s).  To do so, consumers

---

[1] Starter Vimeo is a subscription-based automatic renewal program that provides paying subscribers in the United States with additional features to the free Vimeo Basic plan, including an increased ability to upload 60 videos, as opposed to 25 videos, as well as advanced video editing and management controls, analytics, marketing and distribution capabilities, and privacy controls for $144.00 billed on an annual basis or $20.00 billed on a monthly basis.  The Starter Vimeo was previously named "Plus"—both subscriptions are substantially similar in all material respects, except that the "Plus" subscription offered an additional 250GB capacity until Vimeo changed its subscriptions on or about August of 2022 from offering an increase in storage capacity to increasing the total allowance number of videos uploaded, regardless of their size.  The "Plus" subscription was priced at $84.00 billed on an annual basis or $12.00 billed on a monthly basis. When Vimeo changed its subscriptions on or about August of 2022, it permitted existing subscribers to stay within their subscriptions or change to the updated subscription offerings.  *See* Vimeo, *More simple, more value: Meet Vimeo's new plans* (Aug. 22, 2022), https://vimeo.com/blog/post/new-vimeo-plans.

[2] Standard Vimeo includes all of the features of the Starter Vimeo, plus the ability to upload 120 videos as well as providing additional video editing and management controls, analytics, marketing and distribution capabilities, and privacy controls for $240.00 billed on an annual basis.  The Standard Vimeo was previously named "Pro"—both subscriptions are substantially similar in all material respects, except that the "Pro" subscription offered an additional 1TB capacity which Vimeo changed to the total number of videos that a user can upload, as discussed above, *see supra* note 1.  The "Pro" subscription was priced at $240.00 billed on an annual basis.  *See id*.

[3] Advanced Vimeo includes all of the features of the Starter Vimeo, plus the ability to upload 240 videos, live streamlining and virtual events, as well as additional video editing and management controls, analytics, marketing and distribution capabilities, and privacy controls for $780.00 billed on an annual basis.  The Advanced Vimeo was previously named "Business" and "Premium"—all three subscriptions are substantially similar in all material respects, except that the "Business" and "Premium" subscriptions offered an additional 5TB or 7TB capacity, respectively, which Vimeo changed to the total number of videos that a user can upload, as discussed above, *see supra* note 1.  Prior to Vimeo's changes of its current subscriptions, only the "Premium" subscription supported live streaming and virtual events.  The "Business" subscription currently costs $600.00 billed on an annual basis, while the "Premium" subscription costs $900.00 billed on an annual basis.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

provide Defendant with their billing information, and Defendant then automatically charges its customers' Payment Method as payments are due on a monthly or yearly basis.   Defendant is then able to unilaterally charge its customers renewal fees without their consent, as it is in possession of its customers' Payment Information. Thus, Defendant has made the deliberate decision to charge Plaintiff and other similarly situated customers on a recurring basis, relying on consumer confusion and inertia to retain customers, combat consumer churn, and bolster its revenues.

4.     Pursuant to the ARL, online retailers who offer automatically renewing subscriptions to California consumers must: (i) provide the complete automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to completion of the enrollment process, *see* Cal. Bus. Prof. Code § 17602(a)(1); (ii) obtain consumers' affirmative consent prior to charging their Payment Methods in connection with the subscriptions, *see id*. § 17602(a)(2); and (iii) provide an acknowledgment that includes the automatic renewal offer terms and identifies a cost-effective, timely, and easy-to-use mechanism for consumers to cancel their subscriptions, *see id*. §§ 17602(a)(3), 17602(c).

5.     Those purchasing the Vimeo Subscriptions do so either by choosing a seven-day free trial that automatically renews to a paid yearly subscription at the end of the trial period, or a paid monthly or yearly subscription.  As will be discussed below, the enrollment process for a Vimeo Subscription on the Vimeo Website uniformly violates each of the core requirements of the ARL. Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Vimeo Subscriptions.

6.     Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Methods without first obtaining their affirmative consent to the

3

agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Section 17602(a)(3). *See* Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3); *see also id.* § 17601(b)(1)-(5) (setting forth definition of "automatic renewal offer terms" as used in Cal. Bus. Prof. Code § 17602(a)).  The acknowledgment also fails to disclose a toll-free telephone number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation, and in fact Defendant makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Vimeo Subscriptions, in violation of Section 17602(c) of the ARL.

7. As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" under the ARL.  *See* Cal. Bus. & Prof. Code § 17603.

8. For the foregoing reasons, Plaintiff brings this action individually and on behalf of all California purchasers of any of Defendant's Vimeo Subscriptions from the Vimeo Website who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their Vimeo Subscriptions.  Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (2) conversion; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (4) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (5) unjust enrichment/restitution; (6) negligent misrepresentation; and (7) fraud.

Class Action Complaint – Jury Trial Demanded

**THE PARTIES**

9.     Plaintiff Psalm Pollock is a citizen of California, residing in San Marcos, California.

10.     Defendant Vimeo.com, Inc. ("Vimeo" or "Defendant") is a Delaware corporation with its corporate headquarters and principal place of business located at 330 W 34th St., New York, NY 10001.  Vimeo is an American subscription video-hosting and streaming platform and is one of the most popular streaming services in the United States.  Relevant here, Defendant offers access to certain exclusive Vimeo content, products, and/or services on a contract or fee basis to customers who enroll in the automatically renewing Vimeo Subscriptions.  Defendant owns and operates the Vimeo Subscriptions, which it markets to consumers through the Vimeo Website. Defendant is responsible for the promotion, advertisement, and/or marketing of the Vimeo Subscriptions, and it owns and operates the Vimeo Website. Defendant sells – and, at all times during the Class Period, sold – the Vimeo Subscriptions in California and has done business throughout California and the United States.  In connection with the Vimeo Subscriptions, Defendant made automatic renewal offers to consumers in California and throughout the United States via the Vimeo Website during the Class Period.

11.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims for all members of the proposed class are in excess of $5,000,000.00, exclusive of interests and costs, there

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1    are over 100 members of the putative class, and Plaintiff, as well as most members

2    of the proposed class, is a citizen of a state different from Defendant.

3        13.    This Court has personal jurisdiction over the parties because Plaintiff

4    resides in California, is a citizen of California, and submits to the jurisdiction of the

5    Court, and because Defendant has, at all times relevant hereto, systematically and

6    continually conducted, and continues to conduct, business in California, including

7    within this District.  Defendant therefore has sufficient minimum contacts with this

8    state, including within this District and/or intentionally availed itself of the benefits

9    and privileges of the California consumer market through the promotion, marketing,

10   and sale of its products and/or services to residents within this District and

11   throughout California.  Additionally, Defendant marketed and sold the Vimeo

12   Subscription to Plaintiff in this District.

13       14.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this

14   action because a substantial part of the events, omissions, and acts giving rise to the

15   claims herein occurred in this District.  Also, Plaintiff resides in this District and

16   purchased Defendant's Vimeo Subscription in this District.  Moreover, Defendant

17   systematically conducts business in this District and throughout the State of

18   California, and it distributed, advertised, and sold the Vimeo Subscriptions to

19   Plaintiff and Class Members in this State and District.

## FACTUAL BACKGROUND

### A.    Background On The Subscription e-Commerce Industry

22       15.    The e-commerce subscription model is a business model in which

23   retailers provide ongoing goods or services "in exchange for regular payments from

24   the customer."[4]  Subscription e-commerce services now target a wide range of

25   customers and cater to a variety of specific interests.  Given the prevalence of online

26   and e-commerce retailers, subscription e-commerce has grown rapidly in popularity

---

[4] Core DNA, *How to Run an eCommerce Subscription Service: The Ultimate Guide* (May 19, 2020), https://www.coredna.com/blogs/ecommerce-subscription-services.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

in recent years.  Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have demonstrated a growing preference for access to subscription services[.]"[5]  Analysts at UBS predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $650 billion in 2020.[6]  That constitutes an average annual growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries globally."[7]

16.  Defendant has been riding that wave.  Defendant first launched the subscription model in 2008, when it introduced paid subscriptions offerings available through the Vimeo Website in various tiers (*i.e.*, the Vimeo Subscriptions), which give users, *inter alia*, higher weekly upload allowances and greater storage capacity.[8]  With Defendant's acquisition of Livestream in 2017, Vimeo added

---

[5] Business Insider, *Taco Bell's taco subscription is rolling out nationwide — here's how to get it* (Jan. 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).

[6] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%.").

*See also* Subscribed, *UBS Declares: It's Worth Investing in the Subscription Economy* (Apr. 17, 2021), https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-the-subscription-economy; Business 2 Community, *The Subscription Economy Is Booming Right Now. But Are You Reaping the Full Benefits?* (Oct. 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right-now-but-are-you-reaping-the-full-benefits-02434851.

[7] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra* ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); *see also* Juniper Research, *Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025; Growing To Over $263bn Globally* (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake (acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

[8] *See* The Vimeo Blog, *Presenting Vimeo Plus!* (Oct. 16, 2008), https://vimeo.com/blog/post/presenting-vimeo-plus; *see also* Fortune, *How Vimeo became hipster YouTube* (Feb. 23, 2011), https://fortune.com/2011/02/23/how-vimeo-became-hipster-youtube/.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

another tier to its paid subscription offerings – the "Premium" plan – which allows unlimited uploads and streaming events through Vimeo Live.[9]  As of December 2021, the Vimeo Website had 260 million users and around 1.6 million subscribers.[10]

17.     The production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years.  According to *Forbes*, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[11]  Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[12]  "As such, the financials of companies with subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[13]  Thus, "[t]he share prices of most subscription companies have performed well in recent years."[14]

18.     The expansion of the subscription e-commerce market shows no signs of slowing.  "We're now in the subscriptions era, and the pandemic is accelerating its takeover.  During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business

---

[9] *See* TechCrunch, *Vimeo acquires Livestream, launches its own live video product* (Sep. 26, 2017), https://techcrunch.com/2017/09/26/vimeo-acquires-livestream-launches-its-own-live-video-product/.

[10] *See* U.S. Securities and Exchange Commission ("SEC"), *Vimeo, Inc. 2022 Annual Report (Form 10-K)* (Feb. 27, 2023), https://www.sec.gov/ix?doc=/Archives/edgar/data/1837686/000183768623000006/vmeo-20221231.htm.

[11] Forbes, *The State Of The Subscription Economy, 2018* (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[12] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra*.

[13] *Id*.

[14] *Id*.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

continuity."[15]  According to *The Washington Post*, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[16]

19.    However, as *The Washington Post* has noted, there are downsides associated with the subscription-based business model.[17]  While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[18]  In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[19]  Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be

---

[15] *Id.*

[16] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

[17] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[18] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[19] *Id.*

9

too harried to take the extra step of canceling their membership[s].”[20]  As these companies have realized, “[t]he real money is in the inertia.”[21]  As a result, “[m]any e-commerce sites work with third-party vendors to implement more manipulative designs.”[22]  That is, to facilitate consumer inertia, a number of subscription e-commerce companies, including Defendant, “are now taking advantage of subscriptions in order to trick users into signing up for expensive and recurring plans.  They do this by intentionally confusing users with the design and flow of their Website and Apps, *e.g.*, by making promises of ‘free trials’ that convert after only a matter of days, and other misleading tactics,” such as failure to fully disclose the terms of its automatic renewal programs.[23]

20.     To make matters worse, once enrolled in the subscription, “[o]ne of the biggest complaints consumers have about brand/retailers is that it’s often difficult to discontinue a subscription marketing plan.”[24]  Moreover, “the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government’s ability to scrutinize aggressive marketing practices and ensure that

---

[20] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[21] *Id.*

[22] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (Jun. 25, 2019), https://www.businessinsider.com/dark-patterns-online-shopping-princeton-2019-6.

[23] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[24] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), *supra* (“‘Subscription services are a sneaky wallet drain,’ said Angela Myers, 29, of Pittsburgh. ‘You keep signing up for things and they make it really hard to cancel.’”); *see also* New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

consumers are being treated fairly, consumer advocates say."[25]  For instance, numerous companies, including Defendant, have resorted to using "dark patterns" on their e-commerce platforms.  A dark pattern is "a user interface carefully crafted to trick users into doing things they might not otherwise do, such as … signing up for recurring bills."[26]  Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts[ and] attempting to respond to a proliferation of abuses by some companies over the past few years[,]"[27] widespread utilization of misleading dark patterns and deliberate omissions persist.

21.    Defendant has successfully implemented these tactics.  "In 2021, software as a service Vimeo saw approximately 1.7 million paid subscribers.  This represented an increase of more than 10 percent compared to the previous year when Vimeo had approximately 1.53 million paying users subscribing to their integrated video software solutions."[28]  Thus, Defendant has enjoyed rapid growth to the subscriber count of the Vimeo Subscriptions in light of the fact that "[o]verall time spent streaming has more than doubled since March[ 2020], when the U.S. and other countries largely shut down due to COVID-19."[29]

---

[25] *Id.*

[26] UX Design, *Dark patterns in UX: how designers should be responsible for their actions* (Apr. 15, 2018), https://uxdesign.cc/dark-patterns-in-ux-design-7009a83b233c (quoting UX designer Harry Brignull (PhD Cognitive Science), who coined the term "Dark Patters" in August 2010).

[27] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), *supra*.

[28] Statista, *Number of Vimeo subscribers worldwide in 2020 and 2021* (March 10, 2023), https://www.statista.com/statistics/1300315/vimeo-global-paid-subscribers/

[29] Deadline, *Ad-Free Subscription Growth Outpaces Ad-Supported Fare During COVID-19* (May 29, 2020), https://deadline.com/2020/05/subscription-streaming-growth-outpaces-free-ad-supported-during-covid-19- 1202946438/

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**B.    Defendant's Dark Patterns And Online Consumer Complaints About the Vimeo Subscriptions**

22.    Defendant's recent growth in revenues and subscriber count with respect to its Vimeo Subscriptions coincides with a sharp decline in subscriber satisfaction as the Vimeo Subscriptions and the platforms from which they operate have become riddled with "dark patterns."  Specifically, Defendant has been using various types of dark patterns, including but not limited to "roach motel,"[30] "misdirection,"[31] and "forced continuity," [32] in order to prevent user unsubscription from the Vimeo Subscriptions by adopting complex cancellation procedures to increase the friction in the subscription cancellation process.  Defendant's utilization of these dark patterns – especially in conjunction with its failure to fully disclose the terms of its automatic-renewal programs (discussed further below) – has led to a reduction in churn rates by making it next to impossible for subscribers to cancel their Vimeo Subscriptions. It has further led to an increase in accidental or unintentional sign-ups by consumers for paid Vimeo Subscriptions, in effect increasing subscriber count and, thus, Defendant's overall revenues from renewal fees.[33]

---

[30] "Roach motel" refers to a "design [that] makes it very easy for [consumers] to get into a certain situation, but then makes it hard for [consumers] to get out of it (e.g. a subscription)."  https://www.darkpatterns.org/types-of-dark-pattern/roach-motel.

[31] "Misdirection" is a type of dark pattern where a website's "design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another."  In many cases, "[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening[.]" https://www.darkpatterns.org/types-of-dark-pattern/misdirection.

[32] One example of "forced continuity," another type of dark pattern, is where customers' sign up for a "free trial with a service[ that] comes to an end and [their] credit card silently starts getting charged without any warning.  [The subscriber is] are then not given an easy way to cancel the automatic renewal." https://www.darkpatterns.org/types-of-dark-pattern/forced-continuity.

[33] *See* Gizmodo, *Pervasive 'Dark Patterns' Are Fooling People Into Signing Up for Services They Don't Want* (Sep. 15, 2022), https://gizmodo.com/dark-patterns-ui-cancel-subscription-1849542166 ("As much as you think you have full control of

23.     Vimeo's use of dark patterns is so egregious that the company's practices are consistently used as examples to help UX students and writers understand and explain dark patterns.  For instance, a recent research study from the University of Chicago explained that the Vimeo Website features a "confirmshaming" design, where before "deleting a Vimeo account, the user is confronted with an enlarged sad face during the final confirmation step, where the users decides between a bright-red 'Delete Account' button or an enticing 'I changed my mind!' button"[34]



Figure: Image shown to those in the *Vimeo* group as an example of the confirmshaming.

Another article illustrates how Defendant enrolls its users into paid subscriptions through misdirection:

you and your wallet, it's getting increasingly difficult for anybody using an app or a website to avoid getting suckered into surrendering your money or personal information to misleading or tricky UI design. … Tech companies and online retailers [] lure users into signing up for subscription services while obscuring costs or charges, then making it difficult to actually cancel.  Some dark patterns include confusing users in dense terms of service to obscure key limitations of products or junk fees attached to their use.")

[34] Brennan Schaffner, Neha A. Lingareddy, and Marshini Chetty, *Understanding Account Deletion and Relevant Dark Patterns on Social Media* (Published November 1, 2022), Proceedings of the ACM on Human-Computer Interaction, https://bpb-us-w2.wpmucdn.com/voices.uchicago.edu/dist/1/2826/files/2022/09/SM_Dark_Patterns_CSCW_2022_Camera_Ready.pdf.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

There is another catch.  Point your [ ] browser towards the homepage and click on one of the many 'Get Started' buttons plastered throughout the page.  As soon as you've created an account, you're asked to choose a subscription plan, and there doesn't appear to be a choice to go with the free one (you have a couple of 'start free trial' buttons, but those are linked to their respective subscriptions, and not what you might be after).  This is pure dark pattern stuff, a cardinal UX sin.[35]

In the same vein, writer and website design researcher, Caroline Sinders, highlighted Defendant's misdirection tactics to enroll users into paid subscriptions: "Here's a perfect example [of a] seemingly intentionally-created dark pattern from Vimeo. In this dark pattern, there is an area, like a module, to call out different plans. But if a user clicks on any of these modules, it sends the user to the bottom of the page to re-select the pay plan choice where we see buttons promoting the paid versions, whereas the free version is rendered to look just like plain text…This seems to be an intentional choice; a designer and an engineer made this button look invisible on the website…Imagine defending this design decision in a court of law; technically, Vimeo has included the free/basic version even if it's not 'legible' as a choice to the user."[36]

24.     Despite the above demonstrated consensus concerning how unsettling Vimeo's practices are, Defendant continues to employ these deceptive tactics to lure consumers into enrolling, and remaining enrolled, in paid Vimeo Subscription programs. Defendant's conduct has drawn the attention and ire of customers across the country, with countless angry customers taking to the Internet to voice their discontent over Defendant's broken promises.

---

[35] TechRadar, *Vimeo Create review* (February 22, 2023), https://www.techradar.com/reviews/vimeo-create-review

[36] Caroline Sanders, Dark Patterns and Design Policy (May 20, 2022), https://points.datasociety.net/dark-patterns-and-design-policy-75d1a71fbda5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25.     For instance, numerous subscribers have left scathing reviews on the Better Business Bureau website, complaining of confusion regarding obscured or undisclosed subscription terms, such as Defendant's unclear free trials, billing practices and the confusing cancellation policy associated with the Vimeo Subscriptions.[37]

---

[37] https://www.bbb.org/us/ny/new-york/profile/digital-media/vimeo-0121-87150174/customer-reviews

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED



telsa e



12/09/2022

I tried to cancel 3 times before getting billed the 200$. This company makes it so hard, even emailed legal. I took the standard and attempted to cancel before they start charging me 14$ per month for something I do not need. Not only I was unable to but they charged the annual fee. I am currently on the phone with my bank to initiate a chargeback and will not let this go since they do not reply either. I would give 0 stars if I could



Sonya G.



12/05/2022

Impossibly bad; signed up for trial and was immediately thereafter injured and hospitalized. When i tried to cancel the $826+, they refused all contact and the money has been deducted. i will seek the services of an attorney unless you can suggest other resources.



Melvin D



09/19/2022

They dont allow you any option to cancel after using a free trial , charged me over 900 . Filing against them with my credit union.



Karen M



07/14/2022

Vimeo is dishonest and almost impossible to reach. I signed up for a 30 day free trial with Vimeo assuming I was purchasing the right to WATCH videos, not post original work. There was no indication that Vimeo would charge me $264.60 for a Pro subscription for a full year, when I only wanted one month of watching films on their site. Vimeo's website makes contacting the company almost impossible. The telephone # listed here on the BBB page is no longer associated with Vimeo. The person who answered my call asserted angrily that he could not help me reach them. I tried to cancel my subscription before the automatic renewal date, but they never acknowledged my request. I want the $264.60 charge refunded minus a the price of a single month of viewing privilege.



Robert F



07/01/2022

$49.99 charged to my credit card. I have no idea what this is for. I did not ask to this. Cannot get any answers from their web site. You have to do everything on line with your email name and password, which I don't have because I never set anything up. And how did they get my credit card info?????? Lots and lots of words but no way to get thru to anyone. Will try to work with my credit card company (who accepted this charge without any approval from me) to get this resolved.



Keneetra L



01/06/2022

Very unprofessional service and questionable ethics. They will tell you there is a trial period then charge you before its up and charge you for a plan your not even on. I was charged 3 times in a week $240.00 for a plan I didn't have and then you can't speak to anyone just email. Once you caught on to their non sense they stop responding. They charged me for a pro plan and with pro plan you can not speak to anyone just email. So they charged me for pro plan then downgraded me to basic so now basically I am emailing asking to be refunded with no response back getting anywhere.



Don G.



12/05/2021

Deceptive billing. Plan states "$50/month" ... and in small print below, states "billed annually". I thought I was purchasing a monthly plan. Very deceptive. Avoid this company at all cost!

16

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

26.    Other subscribers to the Vimeo Subscriptions left similar complaints on the Trust Pilot's website:[38]



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



18

27.     The above reviews are just a sampling of numerous negative reviews consumers have left regarding Defendant's Vimeo Subscriptions and the unclear cancellation policies and confusing billing associated with the Subscriptions.  As discussed below, the above online consumer complaints reveal a widespread pattern of uniform unlawful conduct by Defendant, underscoring the artifice devised and employed by Defendant to lure and deceive millions of consumers into enrolling, and remaining enrolled, in their paid Vimeo Subscription programs.

## C.     California's Automatic Renewal Law

28.     In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  Cal. Bus. & Prof. Code § 17600 (statement of legislative intent).  More recently, in 2018, California's Senate Bill 313 amended Section 17602 of the ARL, adding new requirements meant to increase consumer protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.  The California Legislature again amended the ARL in 2022, adding additional notice, disclosure, and cancellation requirements.  *See* Cal. Bus. & Prof. Code §§ 17602(a)(4)(A)-(E), 17602(b)(1)-(2), 17602(d)(1)-(3).

29.     The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1)  Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer.  If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial

ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

(2)  Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3)  Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

30.     As of 2018, the updated ARL also requires that, prior to the completion of the initial order for the automatic renewal or continuous service, sellers must explain the price to be charged when the promotion or free trial ends.  *See* Cal. Bus. & Prof. Code § 17602(a)(1), *supra*.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  *See id*.  Sellers must also notify consumers in the acknowledgment about how to cancel the free trial before they are charged.  *See* Cal. Bus. & Prof. Code § 17602(a)(3), *supra*.

31.     Section 17602(c) of the ARL further provides:

A business that makes an automatic renewal offer or continuous service offer **shall provide a toll-free telephone number, electronic mail address**, a postal address if the seller directly bills the consumer, **or it shall provide another cost-effective, timely, and easy-to-use**

**mechanism for cancellation** that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(c). (emphasis added).

32.    Additionally, following the 2018 and 2022 amendments to the ARL, the updated law also requires e-commerce sellers, doing business in California, to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online.  Specifically, Section 17602(d) provides:

> [A] business that allows a consumer to accept an automatic renewal or continuous service offer online shall allow a consumer to terminate the automatic renewal or continuous service ***exclusively online***, ***at will***, ***and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately***.

Cal. Bus. & Prof. Code § 17602(d)(1) (emphasis added).

33.    The updated ARL further specifies that a seller who provides an automatic offer "shall provide a method of termination that is online in the form of either of the following: (A) A prominently located direct link or button which may be located within either a customer account or profile, or within either device or user settings[; or] (B) By an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information." Cal. Bus. & Prof. Code § 17602(d)(1)(A)-(B).

34.    Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Cal. Bus. & Prof. Code § 17601(a).

35.    Section 17601(b) of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures: (1) That the

subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 17601(b).

36.     Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code § 17601(c).

37.     Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business[.]"  Cal. Bus. & Prof. Code § 17603.

38.     As alleged below, Defendant's practices on the Vimeo Website systematically violates Sections 17602(a)(l), 17602(a)(2), 17602(a)(3), 17602(c), and 17602(d) of the ARL.

**D.     Defendant's Business: The Vimeo Subscription Enrollment Process**

39.     At all relevant times, Defendant offered, via the Vimeo Website, various Vimeo Subscriptions for access to exclusive Vimeo content, products, and/or

services on a contract or fee basis.  The Vimeo Subscriptions are offered on a recurring basis for monthly or yearly renewal terms, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels.  For example, when customers sign up for a straight-to-paid Starter Vimeo Standard, after the initial one-year renewal term, their subscriptions are automatically renewed and their Payment Methods are charged the full standard recurring amount associated with Vimeo Standard, currently $144 (exclusive of tax), for the next year, and every year thereafter if they do not cancel.  Likewise, when customers sign up for a straight-to-paid Standard Vimeo Subscription, after the initial one-year renewal term, their subscriptions are automatically renewed and their Payment Methods are charged the full standard recurring amount associated with Vimeo Standard, currently $240[39] (exclusive of tax), for the next year, and every year thereafter if they do not cancel.  Similarly, when customers sign up for a straight-to-paid Advanced Vimeo Standard, after the initial one-year renewal term, their subscriptions are automatically renewed and their Payment Methods are charged the full standard recurring amount associated with Vimeo Standard, currently $780 (exclusive of tax), for the next year, and every year thereafter if they do not cancel. Defendant also offers each of the Vimeo Subscription plans on a free trial for a limited period of time[40], in which case, at the end of the initial 7-day trial period, customers' subscriptions are converted to paid annual Vimeo Subscriptions and their Payment Methods are automatically charged the full renewal rate associated with that subscription plan for the next billing period, and every subsequent renewal term thereafter if they do not cancel.  Defendant's Vimeo Subscriptions constitute

---

[39] Prior to August of 2022, the Standard Vimeo Subscription was called "Pro" and cost the same amount charged on a yearly basis. See footnote 2, *supra*.

[40] *See* https://vimeo.com/upgrade ("Get started with a free trial of any annual plan, risk-free.").

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

40.     Consumers can sign up for one of Defendant's Vimeo Subscription plans through the Vimeo Website.  Defendant automatically enrolls customers who purchase a straight-to-paid Vimeo Subscription via the Vimeo Website in their chosen Vimeo Subscription program going forward, by default.  In addition, customers may sign up for several of the Vimeo Subscriptions on a free-trial and/or promotional basis (*i.e.*, at a discounted renewal rate), for a limited time. Nevertheless, customers that enroll in a free trial or discounted rate must, like those that sign up for a straight-to-paid Vimeo Subscription, provide Defendant their payment information at the time of enrollment.  Customers' free trial subscriptions automatically convert to paid yearly subscriptions at the end of the trial period, at which point those users are also automatically enrolled by Defendant in a paid Vimeo Subscription program, and as such their Payment Methods are automatically charged by Defendant on a recurring yearly basis in the amount of the full standard or time-limited promotional rate associated with that program, continuing indefinitely until the customer takes affirmative steps to cancel.

41.     To sign up for one of Defendant's Vimeo Subscriptions, the consumer must first select a program.  From the Vimeo Website, prospective subscribers can review features of – and find links to the individual enrollment webpages for – each of Defendant's subscription offerings, including the Vimeo Subscriptions at issue. After selecting one of the Vimeo Subscriptions, consumers who do not already have a free account on the Vimeo Website are prompted to create one by inputting their name and email address, and selecting a password.  After these steps, consumers are directed to the final webpage of the enrollment process (the "Checkout Page") where prospective subscribers are prompted to input their payment information and are then invited to complete their purchase by selecting the blue button at the bottom of

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

the webpage.[41]  For the purposes of the ARL and this Complaint, the "relevant portion of the Checkout Page" refers to the text of that portion of the Checkout Page that appears "in visual proximity to the request for consent to the offer," which in this case pertains to text nearby this final blue button at the bottom of the Checkout Page that customers must click in order to complete the checkout process.

42.    By way of example, when a consumer signs up for a Standard Vimeo Subscription on a free trial basis, the "relevant portion of the Checkout Page" refers to the disclosures contained in the block of gray text immediately above the blue "Start free trial" checkout button at the bottom of the page (*i.e.*, the "request for consent"), which contains the following language and appearance (red box added for emphasis):

---

[41] Defendant requires all users to register or create an account in order to utilize features on the Vimeo Website, so prospective subscribers to any of the Vimeo Subscriptions must either create an Vimeo account or "log in" to a preexisting Vimeo account before they can reach the Checkout Page.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

43.     Similarly, when a consumer signs up for a straight-to-paid Standard Vimeo Subscription, the "relevant portion of the Checkout Page" refers to the disclosures contained in the block of gray text immediately above the blue "Start free trial" checkout button at the bottom of the page (*i.e.*, the "request for consent"), which contains the following language and appearance (red box added for emphasis):

44.     The layout and text of the Checkout Page for each of the paid Vimeo Subscriptions (including, without limitation, the Starter, Standard, and Advanced plans, and including both the free trial and straight-to-paid offerings) is aesthetically and functionally similar to the Checkout Page for the above-illustrated Vimeo Standard Subscription.[42]  In all cases, the relevant portion of the Checkout Page fails

---

[42] As discussed in footnotes 1-3, *supra*, Defendant changed the Vimeo Subscription names on or about August of 2022. Although some of the prices changed after

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

to adequately disclose the automatic renewal terms associated with Defendant's Vimeo Subscriptions in the manner required by law.

45.     Regardless of how the consumer subscribes (via the Vimeo Website, on either its desktop or mobile format), and irrespective of which Vimeo Subscription program (whether Starter, Standard, or Advanced) or of which specific plan the subscriber selects (whether the straight-to-paid, free trial, or promotional subscription options, and whether for monthly or annual renewal periods), Defendant fails to disclose the full terms of its auto-renewal programs either before or after checkout, and it never requires the individual consumer to read or affirmatively agree to any terms of service, *i.e.*, by requiring consumers to click a checkbox next to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for their Vimeo Subscriptions. Consequently, Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – their subscribers before charging consumers' Payment Methods on a recurring basis.

**E.     Defendant Violates California's Automatic Renewal Law**

46.     At all relevant times, Defendant failed to comply with the ARL in three ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) Defendant charged Plaintiff's and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information

---

Defendant updated the Vimeo Subscriptions, their core features, as well as the Vimeo Website's checkout process design and disclosures remained substantially identical throughout the Class Period.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3). Defendant also fails to provide an acknowledgment that discloses a toll-free telephone number or describes another cost-effective, timely, and easy-to-use mechanism for cancellation, and, in fact, Defendant makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Vimeo Subscriptions, in violation of Cal. Bus. & Prof. Code §§ 17602(c) and 17602(d).

        **i.**    **Defendant Fails To Clearly And Conspicuously Present The Vimeo Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**

47.    First, the Checkout Page for the Vimeo Subscriptions does not present the complete "automatic renewal offer terms[,]" as defined by Cal. Bus. & Prof. Code § 17601(b), in violation of Section 17602(a)(1) of the ARL. Specifically, using the pictured free trial and straight-to-paid Standard Checkout Pages above as examples, the Checkout Page does not clearly and conspicuously disclose that "the subscription or purchasing agreement will continue until the consumer cancels." Cal. Bus. & Prof. Code § 17601(b)(1). For instance, although the relevant portion of the above-pictured Checkout Pages indicate – albeit vaguely (which is to say, not "clearly" within the meaning of Cal. Bus. & Prof. Code § 17601(c)) – that "[b]y clicking below, [consumers] agree to [Vimeo's] … automatic renewal" and "authorize Vimeo to charge $240.00 or the then-current rate (plus any tax) each year until [the consumer] cancel[s] in [his or her] account settings," *see supra* ¶¶ 42-43, this information is presented in tiny, grey font without emphasis or distinction, and it is provided in a *smaller* size text as compared to most other text of the Checkout Page. Indeed, much of the other text of the Checkout Page is significantly larger and, in effect, more visually prominent than any disclosures contained in this block of text above the blue "Start free trial" button (for free trial enrollments) or blue

"Complete purchase"[43] button (for straight-to-paid enrollments) of the Checkout Page, which renders this tiny text in the relevant portion of the Checkout Page considerably less conspicuous by comparison and ultimately distracts the eye away from such small text and towards the larger text featured on the majority of the Checkout Page.  Further, the disclosure in the relevant portion of the Checkout Page is presented alongside – and thus, rendered even more inconspicuous by – other, unrelated disclosures of the same font type, size, and color featured within the same block of text (*i.e.*, the "Terms of Service" and "Privacy Policy"), which provides information not required by the ARL, and it is not presented in contrasting font type or color to the immediately surrounding text, emphasized, or otherwise set off from any other text of the Checkout Page by symbols, marks, graphics, or any other distinguishing factors that clearly call attention to the language.  In other words, the disclosure was presented in such a way that it could be, and was, easily overlooked, and is therefore not "clear and conspicuous" as defined by the ARL, *see* Cal. Bus. & Prof. Code § 17601(c).[44]  As such, with respect to the Vimeo Subscription,

---

[43] For the straight-to-paid Vimeo Subscriptions the identical blue button states "Complete purchase."

[44] Based on these features, this block of text placed near the bottom of the Checkout Page and all statements and disclosures buried therein constitute "fine print."  *See Fine Print*, Black's Law Dictionary (9th ed. 2009) (defining "fine print" as "[t]he part of an agreement or document—usu. in small, light print that is not easily noticeable—referring to disclaimers, restrictions, or limitations."); *see also Fine Print*, The Law Dictionary, *available at* https://thelawdictionary.org/fine-print/ (defining "Fine Print" as "[a] small type size that contracts and policy are sometimes printed in" and noting that "[t]he print is small as it relates to rules, deductions, exlusions, and reductions of a policy" and that "[i]t is smaller print than the main part of the document").  **That it is exactly the type of deceptive practice that the California Legislature sought to deter and penalize when it enacted the ARL**.  *See Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1140 n.6 (S.D. Cal. 2021) (ARL Case) ("Notably, the practice that led to ARL was the inclusion of autorenewal terms in fine print."); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print.  Because 'online providers have complete control over the design of their websites,' 'the onus

Defendant fails to disclose "[t]hat the subscription or purchasing agreement will continue until the consumer cancels," *id*. § 17601(b)(1), in the manner required by statute, *see id*. § 17602(a)(1).

48.     Similarly, the relevant portion of the Checkout Pages for the Vimeo Subscriptions does not adequately disclose the recurring amount to be charged to the subscriber's Payment Method each billing period.  For instance, while the relevant portion of the Checkout Pages shown above indicate that subscribers will be charged "$240.00 or the then-current rate (plus any tax) … each year," *see supra* ¶¶ 42-43, this statement is presented in the same block of tiny text at the bottom of the Checkout Page as the disclosure discussed in the paragraph above.  Thus, this statement suffers from the same inconspicuousness and related deficiencies as noted above in that it is also buried in the fine print of the Checkout Page and is likewise easily overlooked.  Therefore, the disclosure is not "clear and conspicuous" as defined by the ARL, *see* Cal. Bus. & Prof. Code § 17601(c).  In fact, the statement is rendered even more inconspicuous by the much large price figure provided above the block of text in question and immediately next to bold text stating "Due today." Further, this price larger figure also fails to satisfy the ARL because it only places consumers on notice of the amount to be charged to their Payment Methods on that particular day, but provides no indication of the *recurring* amount to be charged to the subscriber's Payment Method *each billing period*.  Moreover, the recurring monthly price listed (albeit inconspicuously) is $240 per year, but, as discussed below, the actual recurring monthly price charged to Plaintiff's and other California consumers' Payment Methods in connection with the Standard Vimeo Subscription was $261.30, which includes the full membership fee *and $21.30 in tax*.  Thus, even

---

must be on website owners to put users on notice of the terms to which they wish to bind consumers.") (internal citations omitted).  As a result, any disclosures contained within the relevant portion of Defendant's Checkout Pages – which bury incomplete, unclear, and inconspicuous disclosures regarding required terms in fine print – fail to comply with the ARL.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

had this required automatic renewal offer term been conspicuously disclosed in the Checkout Page (it was not), the disclosure as written provides false information, and, based on that statement, a subscriber is not placed on notice of the precise recurring amount that will be automatically withdrawn from his or her Payment Method each renewal period in connection with the Vimeo Subscriptions.  Thus, Defendant fails to provide notice of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known[,]" *see* Cal. Bus. & Prof. Code § 17601(b)(3), in violation of Section § 17602(a)(1) of the ARL.

49.    Additionally, the Checkout Pages for the Vimeo Subscriptions also fail to adequately disclose the length of the automatic renewal term associated with the Vimeo Subscriptions, *see* Cal. Bus. & Prof. Code §§ 17601(b)(4), 17602(a)(1).  In particular, although the relevant portion of the Checkout Pages shown above indicate that the recurring price associated with the Vimeo Subscriptions will be charged to subscribers' Payment Methods by Defendant "each year," *see supra* ¶¶ 42-43, this statement is presented in the same block of tiny text at the bottom of the Checkout Page as the text concerning automatic renewal feature and recurring price discussed above.  Thus, this statement suffers from the same inconspicuousness and related deficiencies as noted above in that it is also buried in the fine print of the Checkout Page and is likewise easily overlooked.  Therefore, the disclosure is not "clear and conspicuous" as defined by the ARL, *see* Cal. Bus. & Prof. Code § 17601(c).  Further, even if this text were conspicuous and made unequivocally clear to reasonable consumers that the Vimeo's Subscriptions are subject to yearly automatic renewal terms (it is neither), the precise date of a given year or billing period that the consumer will be charged in connection with the Vimeo Subscriptions remains unclear.  For instance, it is not clear whether "year" refers to first day of each calendar, in which case the Vimeo Subscriptions could renew for another year in as

32

little as 3 months after a subscriber enrolls in September, or every 12 months: without regard to the specific calendar date of enrollment.  As a result, the exact length of each renewal term is ambiguous in terms of start and end date—and this information is also necessary for consumers to successfully affect cancellation because, as noted above, consumers must cancel their Vimeo Subscription before the renewal date listed on [their] billing settings page." *See supra* ¶ 50 & n.53.  Further, with respect to the Checkout Page for a *free trial* Vimeo Subscription shown above, *see supra* ¶ 42, this problem is compounded by the fact that the Checkout Page fails to clarify whether, for purposes of determining a precise renewal date, the yearly period associated with the consumer's Vimeo Subscription commences on the date the consumer first enrolled in the free trial, the date the free trial expired, or the first date of the consumer's paid Vimeo Subscription (after expiration of the free trial). Similarly, with respect to the Checkout Page for a *straight-to-paid* Vimeo Subscription shown above, *see supra* ¶ 43, this problem is compounded by the fact that the upper left corner of the Checkout Page contains text stating, in large font, "$12 per seat / month" (misleadingly indicating that the Vimeo Subscription is subject to a monthly renewal period) with much smaller text beneath it inconspicuously stating "Billed annually + tax."  Given the inconspicuousness of the "Billed annually" text, it fails to remedy any confusion caused by the much larger "$12 per seat / month" text above it.  Accordingly, a reasonable consumer would find that statement unclear in regards to the length of the applicable automatic renewal term, and, more specifically, when formal cancellation is required in order to stop Defendant from automatically charging renewal fees to customers' Payment Methods on a recurring basis.  If consumers are not on notice of the precise date that their Vimeo Subscriptions will renew and their Payment Methods will be charged each year or billing period, they cannot, as a practical matter, affect cancellation before that date.  As such, Defendant fails to disclose "[t]he length of the automatic

renewal term or that the service is continuous" in the manner required by the ARL. Cal. Bus. & Prof. Code § 17601(b)(4); *see also id.* § 17602(a)(1).[45]

50.     Moreover, for each of the Vimeo Subscriptions, Defendant also fails to present a complete "description of the cancellation policy that applies to the offer[,]" *see* Cal. Bus. & Prof. Code § 17601(b)(2).  For instance, although the relevant portion of the pictured Checkout Pages above note that the Vimeo Subscription is an "automatic renewal" and that "Vimeo [will] charge [the consumer] … each year until [he or she] cancel[s] in [his or her] account settings," *see supra* ¶¶ 42-43, this disclosure does not inform consumers *precisely* by *when* they must cancel (either their free trial or paid membership) in order to avoid further charges.  Indeed, the Checkout Page for the Vimeo Subscriptions does not explain to consumers that consumers "can cancel [their] subscription[s] at any time before the renewal date listed on [their] billing settings page" and that they "will not be charged for the next billing period if [they] cancel in advance," as is set forth on other pages of the Vimeo Website.[46]  In fact, in light of this policy, the Checkout Page creates further confusion by stating in the upper left column of the Checkout Page that consumers can cancel their subscription "whenever [they] want"; based on the existence of a cancellation deadline, this contradictory text in the upper left column of the

---

[45] While additional information concerning the consumer's next billing date following expiration of the free trial may be provided elsewhere on the Checkout Page shown above, that information does not clarify the exact meaning of "every year" as used in the Checkout Page such that consumers are informed, as a general matter, as to the length of the applicable renewal cycle or are able to reliably calculate their precise billing date for subsequent year. Additionally, to the extent this information does not appear in the block of text immediately above the "Start free trial" button, it is not presented "in visual proximity ... to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1).

[46] Vimeo Help Center, *Cancel my subscription*, https://help.vimeo.com/hc/en-us/articles/12425433330577-Cancel-my-subscription#01GHY8GZX4EC5GM0BBH77H960Y; *see also Vimeo Terms of Service* (last updated Sep. 1, 2022), https://vimeo.com/terms ("[S]ubscriptions automatically renew at the end of each subscription period unless canceled beforehand.").

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Checkout Page is patently inaccurate.  The Checkout Page also fails to disclose Defendant's policies that "[w]hen [consumers] cancel [their Vimeo S]ubscription[s,] … [they] will not be automatically refunded for past charges but [] may be eligible for a refund,"[47] and that "subscribers who purchase plans directly from Vimeo may cancel and receive a full refund of their initial purchase within thirty (30) days after purchasing an annual plan and five (5) days after purchasing a monthly plan,"[48] terms that are also disclosed in other areas of the Vimeo Website.  Further, the Checkout Page fails to disclose the consequences of cancellation, including, *inter alia*, the fact that "[w]hen a subscription ends, the account will[] … revert to a free membership or will be deleted[ and a]ny content in the account may be deleted to comply with the limitations of the new account status," as is also disclosed on other pages of the Vimeo Website.[49]  Nor does the Checkout Page disclose precisely *how* to cancel, as is specified in other webpages of the Vimeo Website.[50]  Indeed, the Checkout Pages do not mention that, in order to cancel, subscribers must: (1) find and click on their "Settings" tab (which is unintuitively placed in a drop-down menu that appears after hovering on an emoji face lacking any descriptive text); (2) find and click on the "Billing" tab (which again provides another drop-down menu); (3) find and click the "Cancel trial" or "Cancel subscription" link (which is located at the bottom right corner of the page in minuscule red font without emphasis); (4)

---

[47] *Id.*

[48] *Vimeo Terms of Service* (last updated Sep. 1, 2022), *supra*.

[49] *Id.*; *see also* Vimeo Help Center, *Lapsing from paid membership to Basic membership*, https://help.vimeo.com/hc/en-us/articles/115006635407-Lapsing-from-paid-membership-to-Basic-membership ("If your total video storage exceeds 5GB, you will lose the ability to upload new content upon lapsing.  You can free up storage on your existing account by deleting some of your older videos, rough cuts, or backups until you are under the 5GB cap. … If your paid membership lapses to Basic, any source files that were stored on Vimeo will be deleted after 60 days and cannot be recovered.") (emphasis added).

[50] *See* Vimeo Help Center, *Cancel my subscription*, *supra* (describing multi-step process for "cancel[ling] the automatic renewal of [a paid Vimeo S]ubscription or free trial").

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

click on the "Turn off auto-renew" button after reading Vimeo's "confirmshaming"[51] and "misdirection"[52]-featuring pop-up screen;  and (5) find and click the "Turn off auto-renew" button (which is deceptively designed with a transparent fill juxtaposed to a more prominent blue "Return to settings" button), as set forth elsewhere in the Vimeo Website.[53]  An image of the pop-up screen featuring "confirmshaming" and "misdirection" dark patterns, shown to consumers at step 4 of the cancellation process, is depicted in the screenshot below:

---

[51] "Confirmshaming" is one type of dark pattern plaguing various aspects of the Vimeo Website, including the online cancellation mechanism.  *See supra* ¶ 23; *see also* Built In, *What Is Confirmshaming and Why Should You Avoid It?* (Sep. 21, 2021), https://builtin.com/design-ux/confirmshaming ("According to researchers at Princeton University and the University of Chicago, … you might [] spot [the confirmshaming dark pattern] in unsubscribe processes[.] … Confirmshaming is an example of a dark pattern, another term that Brignull originated to describe interface designs that manipulate or coerce users."); Deceptive Design, *Confirmshaming*, https://www.deceptive.design/types/confirmshaming ("Confirmshaming is the act of guilting the user into opting in to something.  The option to decline is worded in such a way as to shame the user into compliance.").

[52] "Misdirection" is another type of dark pattern plaguing various aspects of the Vimeo Website, including the online cancellation mechanism.  *See supra* ¶ 22 n.35 ("'Misdirection' is a type of dark pattern where a website's 'design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another.'  In many cases, '[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening[.]'") (citation omitted).

[53] Vimeo, *Help Center,  Cancel my subscription*, https://help.vimeo.com/hc/en-us/articles/360057598871-Cancel-my-subscription#01GHY8H1S742N4HETADB0M9G09 (last accessed March 17, 2023).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

51. In sum, neither of the statements discussed above concerning cancellation constitutes a fulsome or clear description of Defendant's cancellation policy. Indeed, other webpages of the Vimeo Website beyond the Checkout Page – none of which are shown to subscribers during the enrollment process – are much clearer about the cancellation deadline, process, and the consequences of cancellation (or failing to cancel the Vimeo Subscriptions in advance of the cut-off deadline). These undisclosed terms concerning how and when to cancel, the consequences of doing so, and the availability of a refund for consumers that cancel within a specified period after enrollment constitute material aspects of Defendant's cancellation policy. At no point during the life of her Vimeo Subscription was

Plaintiff required or even prompted to navigate to or otherwise examine any of the terms disclosed on any other page of the Vimeo Website, aside from the Checkout Page.  Thus, Plaintiff was not aware of the omitted and inadequately disclosed automatic renewal terms discussed above.  Yet, prior to checkout, Defendant was obligated by law to place consumers on notice of these aspects of Defendant's cancellation policy in accordance with the ARL, which requires that companies provide such information "in visual proximity to the request for consent to the [automatic renewal] offer."  Cal. Bus. & Prof. Code § 17602(a)(1); *see also id.* § 17601(b)(2).  It is not enough that the cancellation policy may be set forth on the hyperlinked pages located elsewhere on the Vimeo Website; the ARL requires that Defendant present its full cancellation policy directly on the Checkout Page – and it must further do so "clearly and conspicuously," *id.* § 17601(c), and with the requisite proximity (*i.e.*, they must appear in the block of text immediately above the final blue checkout button on the bottom of that page), *see id.* § 17602(a)(1) – so as to allow the consumer to read and review the applicable offer terms immediately prior to purchase.[54]  However, Defendant failed, and continues to fail, to satisfy that requirement, in violation of Section 17602(a)(1) of the ARL.

---

[54] Indeed, reference to hyperlinks leading to required disclosures set forth on other pages of the Vimeo Website is not tantamount to disclosure of them on the Checkout Page, as the ARL requires.  *See Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1139-40 (S.D. Cal. 2021) (ARL Case) ("Defendant … argues the required terms were accessible through a hyperlink that was a few centimeters from the request for consent.  **But the terms themselves—not the access point to them— need to be in visual proximity to the request**.") (emphasis added).  Since businesses' "inclusion of autorenewal terms in fine print" was "the practice that led to ARL" in the first place, and "[t]he use of a hyperlink to the terms presents a similar practice," *id.* at 1140 n.6 (citation omitted), any required disclosures that may be contained in the hyperlinked webpages—*but not provided directly on the Checkout Page itself*—cannot satisfy the ARL.  *See also id.* at 1139-40 ("The required terms do not appear on the webpage that contains the request for consent.  Defendant argues it is common to use a hyperlink to terms and conditions, and that practice is sufficient to form a valid contract.  That might be true.  However, it does not change what is required under ARL (the disclosure of terms in a specific manner and location).  **Given the terms appear nowhere near the request for consent,**

52.     As a result of Defendant's missing and otherwise deficient pre-purchase disclosures, when Plaintiff selected and enrolled in her Vimeo Subscription, she was unaware that Defendant enrolled her in an "automatic renewal" program under which her Vimeo Subscription would renew each year and result in continuous yearly automatic renewal charges to her Payment Method, unless and until she effectively canceled the subscription.

### ii.     Defendant Fails To Obtain Consumers' Affirmative Consent To The Automatic Renewal Terms Associated With The Vimeo Subscriptions.

53.     Second, at no point during the checkout process does Defendant require consumers to read or affirmatively agree to any terms of service associated with their Cricut Subscriptions, *i.e.*, by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process. Accordingly, when Defendant automatically renews customers' Vimeo Subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2).

### iii.     Defendant Fails To Provide A Post-Checkout Acknowledgment That Clearly And Conspicuously Discloses The Required Vimeo Subscription Offer Terms.

54.     Finally, after Plaintiff and the members of the Class subscribed to one of Defendant's Vimeo Subscriptions, Defendant sent to Plaintiff and the Class email follow-ups regarding their purchases (the "Acknowledgment Email").

55.     By way of example, at least as of March 2023, consumers who enroll in the *free trial* for the Standard Vimeo Subscription received an email from Defendant upon completion of the checkout process.  The subject line of the Acknowledgment

**Plaintiff has plausibly alleged Defendant did not comply with section 17602(a)(1).**") (emphasis added and internal citations omitted).

Email that Defendant sent to Vimeo Standard subscribers, stated: "Your Vimeo Standard trial has begun."  The body of the Acknowledgment Email contained, in relevant part, the following text and images:



56.    Similarly, at least as of March 2023, when consumers sign up for the straight-to-paid Standard Vimeo Subscription, Defendant sent subscribers a nearly identical Acknowledgment Email, featuring substantially the same disclosures with the subject line: "It's official, Vimeo Standard is now yours."  The body of the Acknowledgment Email contained, in relevant part, the following text and images:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   57.   The layout and text of the Acknowledgment Emails for each of the
19 other Vimeo Subscriptions during the applicable Class Period are aesthetically and
20 functionally similar to the Acknowledgment Email for the free trial and straight-to-
21 paid Vimeo Standard Subscriptions shown above.  Moreover, although the above-
22 shown Acknowledgment Emails are exemplars from approximately March 2023, the
23 Acknowledgment Emails that Defendant has sent to new subscribers of the Vimeo
24 Subscriptions during the Class Period (including on August 2021, when Ms. Pollock
25 enrolled in her free trial, to and through the present day) are substantively and
26 materially identical or substantially the same in terms of layout, organization, and
27 most importantly, text, as the March 2023 versions shown above.  In all cases, the
28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Acknowledgment Emails for the Vimeo Subscriptions fail to adequately disclose the applicable automatic renewal terms in the manner required by law.

58.     The Acknowledgment Emails suffer from substantially the same deficiencies as those on the Checkout Pages for the Vimeo Subscriptions, described above.  Namely, the Acknowledgment Emails do not adequately disclose: that the subscription "will continue until the consumer cancels[,]" Cal. Bus. & Prof. Code § 17601(b)(1); a statement of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, [and] if that is the case, and the amount to which the charge will change, Cal. Bus. & Prof. Code § 17601(b)(3); or "[t]he length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer[,]" Cal. Bus. & Prof. Code § 17601(b)(4).  Disclosures of these required automatic renewal terms are either missing altogether, are deceptively incomplete, objectively inaccurate, and/or are inconspicuously buried in the tiny fine print at the bottom of the email.

59.     Additionally, the Acknowledgment Emails do not provide *any* "description of the cancellation policy that applies to the offer[,]" Cal. Bus. & Prof. Code § 17601(b)(2).  In fact, the word "cancel" does not appear in Acknowledgment Emails at all.  Thus, the Acknowledgment Emails fail to satisfy the ARL, which requires that Defendant "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer."  Cal. Bus. & Prof. Code § 17602(a)(3).  As a result, the Acknowledgment Email further violates the ARL under Cal. Bus. & Prof. Code §§ 17602(a)(3) and 17602(b).

60.     Additionally, the Acknowledgment Emails fail to provide a toll-free telephone number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation, and, in fact, Defendant makes it exceedingly difficult

and unnecessarily confusing for consumers to cancel their Vimeo Subscriptions, which further violates the ARL under Cal. Bus. & Prof. Code § 17602(c).

* * *

61.     In sum, Defendant's deficient pre- and post-purchase disclosures and lack of affirmative consent fail to comply with the ARL.  By and through these actions, Defendant has charged Plaintiff's and Class members' Payment Methods in direct violation of the ARL.  As a result, all goods, wares, merchandise, and/or products sent to Plaintiff and the Class upon the automatic renewal of their continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

62.     Because Defendant failed to disclose this material information in the manner required by statute, Plaintiff was unable at the point of sale to accept or provide affirmative consent to Defendant's offer or knowingly enter into to the purchase agreements.  Thus, as a direct result of Defendant's missing, incomplete, and otherwise deficient disclosures on the Checkout Page and in the Acknowledgment Email, Plaintiff was induced to sign up for, unable to terminate, and automatically charged for her Vimeo Subscription.

63.     Further, as a direct result of Defendant's unlawful conduct described above, Plaintiff and putative Class Members have incurred substantial financial injury in the form of all monies withdrawn from their Payment Methods in connection with the Vimeo Subscriptions.  Specifically, Defendant's ARL violations concerning the Vimeo Subscriptions caused Plaintiff's and Class members' financial injury because they reasonably relied on the conspicuous disclosures of Defendant's Checkout Page and Acknowledgment Email (and, as a natural corollary, the omissions and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase their Vimeo Subscriptions in the first place and whether to continue paying for it upon after that (*i.e.*, by not cancelling the auto-renewal).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

64.     Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals against Defendant for violations of California's consumer protections statutes, including California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200.  As set forth in detail below, Plaintiff's claims, which are based on Defendant's failure to comply with the ARL, arise under the "unlawful" prong of the UCL.  Further, because the Vimeo Subscriptions were, by operation of law, "unconditional gifts" to Plaintiff and putative Class Members (*see* Cal. Bus. & Prof. Code § 17603) – and thus, Plaintiff and Class Members already owned the goods, tools, and benefits of the subscriptions as their personal property at the time Defendant withdrew monies from their Payment Methods as consideration for access to the same, without any legal or contractual authority to do so – Plaintiff's claims are also based on Defendant's practice of charging consumers in exchange unconditional gifts and arise under the "fraudulent" and "unfair" prongs of the UCL.  Additionally, Plaintiff brings this action against Defendant for violations of the CLRA and FAL, and conversion, unjust enrichment, negligent misrepresentation, and fraud.

## PLAINTIFF'S INDIVIDUAL ALLEGATIONS

65.     Plaintiff Psalm Pollock is an individual consumer who signed up for a free trial to Defendant's Pro Vimeo Subscription in or around August of 2021, from Defendant's Website while residing in California.  At the time Ms. Pollock signed up for her Vimeo Subscription, she provided her Payment Method information directly to Defendant.

66.     Before Ms. Pollock purchased her Vimeo Subscription, Defendant did not disclose to Ms. Pollock all of the required automatic renewal offer terms associated with her subscription program.  Additionally, although the Checkout Page from which Ms. Pollock made her purchase included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Ms. Pollock on notice of the material automatic renewal offer

terms applicable to her Vimeo Subscription.  Specifically, prior to completing her Vimeo Subscription order, the relevant screens and buttons presented to Ms. Pollock did not clearly and conspicuously state that her Vimeo Subscription would automatically renew every year until she canceled; they did not state the recurring charges that would be charged to Ms. Pollock's Payment Method as part of the automatic renewal plan, explain that the timing of the charge would change, or disclose the yearly date to which the charge would change; and they did not describe the full cancellation policy that applied to the purchase.

67.     Moreover, at no point prior to completing her initial purchase did Defendant obtain Ms. Pollock's affirmative consent to an agreement containing the automatic renewal offer terms.

68.     After Ms. Pollock completed her initial order, Defendant sent Ms. Pollock an Acknowledgment Email stating that her Vimeo Subscription had been activated.  However, that Acknowledgment Email failed to provide Ms. Pollock with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Pollock's Vimeo Subscription in a manner capable of being retained by her.  Ms. Pollock did not receive any other acknowledgments that contain the required information.

69.     As a result of Defendant's missing and otherwise deficient disclosures, when Ms. Pollock selected and enrolled in her free trial Vimeo Subscription, she was unaware that Defendant enrolled her in an "automatic renewal" program under which the subscription would renew each year and result in continuous monthly automatic renewal charges to her Payment Method unless and until Plaintiff chose to cancel.

70.     Nevertheless, in or around September 2021, approximately one month after her initial enrollment in her free trial of the Vimeo Subscription, Defendant automatically renewed Ms. Pollock's Vimeo Subscription and charged her Payment

Method in the amount of $240.00, the full yearly rate associated with the paid yearly Vimeo Plus Subscription.  Thereafter, Ms. Pollock learned upon review of her billing statements and banking history that, notwithstanding her belief that she had only signed up for a free trial, Defendant had automatically renewed Ms. Pollock's Vimeo Subscription upon the expiration of the free trial period and, without Ms. Pollock's affirmative consent, charged Ms. Pollock's Payment Method in the full standard yearly rate of $240.00 associated with her Vimeo Subscription.  After seeing Defendant's charge to her Payment Method, Ms. Pollock attempted to cancel her Vimeo Subscription, which she struggled to do due to Defendant's obscured, confusing, and time-consuming cancellation policy.  Ultimately, Ms. Pollock was able to affect cancellation, and thereby stop Defendant from automatically charging her Payment Method before the next billing in or around September 2022.

71.     Additionally, once Ms. Pollock's Vimeo Subscription was finally terminated – which only happened after several unsuccessful cancellation attempts – Ms. Pollock discovered that a substantial amount of the content that she had previously uploaded using Vimeo was deleted after Defendant downgraded her account to a basic subscription.  As discussed above, if subscribers choose to cancel their Vimeo Subscriptions, their "account will, at Vimeo's option, revert to a free membership or will be deleted [and] [a]ny content in the account may be deleted to comply with the limitations of the new account status."  *See supra* ¶ 50 & n.56. However, this consequence of cancellation was not disclosed on the Checkout Page that Plaintiff reviewed at the point of purchase or the Acknowledgment Email she received subsequent thereto, among other material omissions.  Thus, prior to cancellation, Ms. Pollock was under the impression that she would be able to retain the additional content she was able to upload through her Vimeo Subscription.  But, as Plaintiff and other subscribers discovered long after their initial enrollments, that is not true.  Indeed, some subscribers have written blogs and articles warning potential consumers that Vimeo will hold their videos and other content captive if

they chose not to auto-renew their subscriptions: "Vimeo is an excellent platform for filmmakers to show their work.  However, keep in mind that once you are there as a paying customer, you are captured by their subscription model and most likely, you will need to pay forever to keep your videos alive."[55]  As another blogger explained "[i]n other words, small customers [for Vimeo] undesirable, especially if their audiences view a few too many videos in 4K. As a result, some customers paying $200 annually to Vimeo are now asked to fork over thousands or have their content deleted…this felt like a rather shocking bait-and-switch."[56]  Other consumers have expressed their frustration on social media channels.  On February 27, 2023, a Reddit user wrote: "I abandoned Vimeo finally, after maybe 12 years of paying for it. UI is awful, customer service is awful, the way they threaten to delete your videos if you decide to cancel your plus or other premium subscription for a short while is also needlessly aggressive [] towards paid users."[57]

72.     Like many other subscribers, upon cancellation of her Vimeo Subscription, Ms. Pollock lost a substantial amount of her uploaded content, as well as the audience to that content, and thus suffered further consequential damages in the form of loss money and/or property.

73.     Notably, neither the Checkout Page nor the Acknowledgment Email contain any explanation whatsoever regarding how and when to cancel or the consequences of cancellation the Vimeo Subscriptions.  As a result, based on the pre- and post-check out disclosures featured on the Checkout Page and in the

---

[55] Y.M.Cinema Magazine, *Vimeo is Deleting Your Videos When you Switch to Basic Account*, (Apr. 3, 2019), https://ymcinema.com/2019/04/03/vimeo-is-deleting-your-videos-when-you-switch-to-basic-account/

[56] AE Studio, *Victims of Vimeo* (Mar. 21, 2022), https://ae.studio/blog/victims-of-vimeo

[57] Reddit, post by u/Sigerr: "In all seriousness - WTF is wrong with vimeo?" (posted Mar. 3, 2023), https://www.reddit.com/r/Filmmakers/comments/11h4hzm/in_all_seriousness_wtf_is_wrong_with_vimeo/.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Acknowledgment Email, at the time of her initial enrollment and for most of the life of her Vimeo Subscription, Ms. Pollock did not know as a basic matter that the subscription program would automatically renew and result in recurring charges to her Payment Method or that cancellation was required to stop those charges.  Nor was she aware of the other material aspect of Defendant's cancellation policy discussed above, such as the mechanisms for effecting cancellation, the deadline to cancel, or the consequences of doing so.

74.     Ms. Pollock was not previously aware of any of the omitted aspects of Defendant's cancellation policy discussed above, *see supra* ¶ 50.  At no point during her Vimeo Subscription was Ms. Pollock required or even prompted to navigate to or otherwise examine any of the terms disclosed on the on any other page of the Vimeo Website aside from the Checkout Page.  Further, Defendant neglected to disclose this information to Ms. Pollock at the point of purchase on the Checkout Page or in the Acknowledgment Email that Defendant sent to Ms. Pollock after he completed the checkout process.  Accordingly, Defendant failed to place Ms. Pollock on notice of its cancellation policy or provide Ms. Pollock information regarding how to cancel in a manner that is capable of being retained by her, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3).

\*\*\*

75.     Ms. Pollock's confusion and surprise with respect to, *inter alia*, Defendant's automatic renewal policies and practices – including the basic fact of automatic renewal, the amount and timing of the recurring renewal fees she incurred during the life of her Vimeo Subscription – is the direct result of Defendant's failure to adequately place Pollock on notice of several material automatic renewal offer terms associated with her Vimeo Subscription.  That is, Ms. Pollock was not made aware of the fact that Defendant enrolled her in an "automatic renewal" program under which his Vimeo Subscription would automatically renew each year after the initial one-month trial period, unless and until Ms. Pollock took action to effectively

cancel that subscription, nor was she apprised of the recurring price to be charged or of the length of the applicable automatic renewal term associated with her Vimeo Subscription. Because Defendant failed to disclose this material information in the manner required by statute, Ms. Pollock was unable at the point of sale to accept Defendant's offer or knowingly enter into to the purchase agreement.

76.     Additionally, as discussed above, neither the Checkout Page nor the Acknowledgment Email adequately explain how to cancel the Vimeo Subscriptions, provide contact information that the consumer can use to reach out to Defendant and affect cancellation (such as email address or toll-free phone number), or state the consequences of cancellation— especially with respect to the consumer's ability to obtain a partial and/or full refund following cancellation.  As a result, Ms. Pollock was not previously aware of any of the altogether omitted aspects of Defendant's cancellation policy.  At no point during her Vimeo Subscription was Ms. Pollock required or even prompted to navigate to or otherwise examine any of the terms disclosed on the on any other page of the Vimeo Website aside from the Checkout Page.  Further, Defendant neglected to disclose this information to Ms. Pollock at the point of purchase on the Checkout Page or in the Acknowledgment Email that Defendant sent to Ms. Pollock after she completed the checkout process. Accordingly, Defendant failed to place Ms. Pollock on notice of its cancellation policy or provide Ms. Pollock information regarding how to cancel in a manner that is capable of being retained by her, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3), 17602(c).

77.     Moreover, even if the Acknowledgment Email had contained Defendant's complete cancellation policy (it did not), the "mechanism for cancellation" that exists is not one that Ms. Pollock and other reasonable consumers would consider "timely" or "easy-to-use." Defendant therefore failed to provide Ms. Pollock with a "timely[] and easy-to-use mechanism for cancellation" or describe

1   any such mechanism in an Acknowledgment Email, in violation of Cal. Bus. & Prof.

2   Code § 17602(c).

3        78.    Defendant's failure to fully and adequately disclose the automatic

4   renewal offer terms associated with the Vimeo Subscriptions on the Checkout Page

5   and in the Acknowledgment Email, its failure to obtain Ms. Pollock's affirmative

6   consent before charging her Payment Method on a recurring basis, and its failure to

7   issue a refund for the several months of unauthorized renewal charges it posted to

8   Ms. Pollock's Payment Method notwithstanding the lack of affirmative consent are

9   contrary to the ARL, which deems products provided in violation of the statute to be

10   an "unconditional gift" to consumers that they "may use or dispose of … in any

11   manner [they] see[] fit without any obligation whatsoever on the consumer's part to

12   the business." Cal. Bus. & Prof. Code § 17603.

13        79.    Further, Defendant's practice of remotely disabling these goods,

14   features, benefits, and tools of the Vimeo Subscriptions upon cancellation runs

15   contrary to Section 17603 the ARL. *See id.* That is, because Defendant violated the

16   ARL as described above and below, the goods that Ms. Pollock received in

17   connection with her Vimeo Subscription were, in fact and by operation of law,

18   "unconditional gifts" to her. In other words, Plaintiff assumed absolute ownership

19   of these subscription benefits from the moment she received them, and Defendant

20   was not entitled to interfere with her continued ownership, possession, and/or use of

21   such goods.

22        80.    As a direct result of Defendant's unlawful conduct described above

23   (*e.g.*, its missing and otherwise deficient disclosures on the Checkout Page and in the

24   Acknowledgment Email, and its non-compliance cancellation mechanism), Ms.

25   Pollock was induced to sign up for, and unable to terminate, her Vimeo

26   Subscription. In other words, Defendant's ARL violations concerning the Vimeo

27   Subscriptions caused Plaintiff's financial injury because she reasonably relied on

28   Defendant's conspicuous disclosures of the Checkout Pages and the

Acknowledgment Emails (and, as a natural corollary, the omissions and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase her Vimeo Subscriptions in the first place and whether to continue paying for it upon after that (*i.e.*, by not cancelling the auto-renewal prior to the expiration of her free trial period or before incurring further charges for any subsequent paid renewal periods).  Additionally, Plaintiff also lost property as a direct result of Defendant's unlawful conduct—namely, loss of the digital goods and benefits of the Vimeo Subscriptions, which had become Plaintiff's unconditional property by operation of the ARL, but which she was barred access by Defendant following termination of her Vimeo Subscription.

81.     Had Defendant complied with the ARL by adequately disclosing – and obtaining Ms. Pollock's affirmative consent to – the requisite Vimeo Subscription terms on the Checkout Page at the point of Ms. Pollock's initial enrollment in August of 2021, Ms. Pollock would have been able to read and review the auto renewal terms prior to purchase and she would have not enrolled in the Vimeo Subscription in the first place, or would have subscribed on materially different terms, thereby avoiding financial injury of any kind as a result of Defendant's ARL violations.  Similarly, had Defendant complied with the ARL by adequately disclosing the terms associated with Ms. Pollock's Vimeo Subscription in the post-checkout Acknowledgment Email (*i.e.*, after initial enrollment but before Defendant subsequently automatically renewed Ms. Pollock's Vimeo Subscription for a full paid year membership and charged her Payment Method accordingly), Ms. Pollock would have been able to read and review the auto renewal terms prior to renewal, and she would have canceled her Vimeo Subscription prior to the expiration of the free trial period or any subsequent renewal period in which she would have learned such information, thereby avoiding all or part of the automatic renewal charge that Ms. Pollock incurred on September 2021.  But Defendant did not adequately disclose the required automatic renewal terms in either the Checkout Page or the

Acknowledgment Email, thereby depriving Ms. Pollock of the opportunity to make an informed decision as to the transaction.

82.     The facts giving rise to Ms. Pollock's claims are materially the same as the Class she seeks to represent.

## CLASS ACTION ALLEGATIONS

83.     ***Class Definition***.  Plaintiff brings this action pursuant to Code of Civil Procedure § 382 and Civil Code § 1781 on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, incurred renewal fee(s) in connection with Defendant's offerings for paid Vimeo Subscriptions.

84.     Specifically excluded from the Class are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

85.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

86.     ***Numerosity.***  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, the Class comprises at least millions of consumers throughout California.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

87.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only

individual Class members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant's Vimeo Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's and Class members' Payment Method for an automatic renewal or continuous service without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of Cal. Bus. & Prof. Code § 17602(a)(2); (d) whether Defendant failed to provide an acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and the Class, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (g) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (h) whether Plaintiff and the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (j) whether Plaintiff and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

88.     ***Typicality.***  The claims of Plaintiff Pollock are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiff's and

the Class's affirmative consent to the automatic renewal offer terms or continuous service offer terms associated with the Vimeo Subscriptions before charging their Payment Methods.

89.   ***Adequacy***.   Plaintiff will fairly and adequately protect Class members' interests.   Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

90.   ***Superiority***.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

91.   Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

92.   Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

93.   Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*

94.   Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

95.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

96.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

97.     As alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiff and the Class.

98.     Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful and/or unfair conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*  Specifically, Defendant failed, and continues to fail, to: (a) provide the auto-renewal terms associated with its Vimeo Subscriptions "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Methods, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and

information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Vimeo Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

99.    Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

100.   All products received from Defendant in violation of the ARL, Cal. Bus. Prof. Code §§ 17602, *et seq.*, constitute "unconditional gifts."  *See* Cal. Bus. Prof. Code § 17603.  As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and the Class in the form of payments made by Plaintiff and Class members for their Vimeo Subscriptions.  Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon.

101.   Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

102.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

103.   Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

104.   Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue of Defendant's acts of unfair competition, which caused them to purchase the Vimeo Subscriptions.  Had Defendant complied with its disclosure obligations under the ARL, Plaintiff and members of the Class would not have purchased their Vimeo Subscriptions or would have canceled their Vimeo

Subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.  Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

105.   Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Vimeo Subscriptions are still used by Defendant today.

106.   Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's Payment Methods in connection with their Vimeo Subscriptions during the four years preceding the filing of this Complaint. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and the Class, from whom they were unlawfully taken.

107.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

108.   Plaintiff Pollock brings this action as private attorney general and to vindicate and enforce an important right affecting the public interest.  Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

## COUNT II
### Conversion

109.   Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

110.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

111.   As a result of charges made by Defendant to Plaintiff's and Class members' Payment Methods without authorization and in violation of California law, Defendant has taken money that belongs to Plaintiff and the Class.

112.   The amount of money wrongfully taken by Defendant is capable of identification.

113.   Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice within the meaning of Cal. Civil Code § 3294(c).

114.   As a result of Defendant's actions, Plaintiff and the Class have suffered damages.

## COUNT III
### Violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

115.   Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

116.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

117.   California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

118.   Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California

and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

119.   Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's Vimeo Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments.  Defendant is silent with regard to the terms of its cancellation policy.  These omissions on the Checkout Page and the Acknowledgment Email constitute false and deceptive advertisements.

120.   Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

121.   Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their Vimeo Subscriptions, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions.  Plaintiff and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already signed up and started paying for Defendant's Vimeo Subscription.  They relied on Defendant's statements and omissions to their detriment.

122.   Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the Vimeo Subscriptions on the same terms if the true facts were known about the product and the Vimeo Subscriptions do not have the characteristics as promised by Defendant.

123.   Plaintiff Pollock, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

## COUNT IV
### Violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

124.   Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

125.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

126.   Plaintiff and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

127.   Defendant's selection and/or subscription offers and the other products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b).  The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

128.   The acts and practices of Defendant as described above were intended to deceive Plaintiff and the Class as described herein, and have resulted, and will result, in damages to Plaintiff and the Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the Vimeo Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices

constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

129.   Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase Vimeo Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid.  Had Defendant fully and clearly disclosed the terms associated with the Vimeo Subscriptions, Plaintiff and the Class would have not subscribed to the Vimeo Subscriptions, or they would have cancelled their Vimeo Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

130.   Plaintiff Pollock, on behalf of herself and all other members the Class, seeks an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

131.   In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on April 4, 2023, informing Defendant of her intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff Pollock will amend her complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

## COUNV V
### Unjust Enrichment / Restitution

132.   Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

133.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

134.   Plaintiff and the Class conferred benefits on Defendant by purchasing the Vimeo Subscriptions.

135.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the Class's purchases of the Vimeo Subscriptions.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose material terms of the purchase agreement, in violation of California law, induced Plaintiff and the Class to purchase the Vimeo Subscriptions.  These omissions caused injuries to Plaintiff and the Class because they would not have purchased the Vimeo Subscriptions at all, or on the same terms, if the true facts were known.

136.   Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class for their unjust enrichment, as ordered by the Court.

**<u>COUNT VI</u>**
**Negligent Misrepresentation**

137.   Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

138.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

139.   As discussed above, Defendant omitted, failed to disclose, and intentionally concealed from its advertisements and related statements regarding the Vimeo Subscriptions material facts concerning billing, cancellation, and automatic payment terms, policies, and requirements.

140.   At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

141.   At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Vimeo Subscriptions and their associated terms.

142.   The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase and enroll in Defendant's Vimeo Subscription programs.

143.   Plaintiff and Class members would not have purchased the Vimeo Subscriptions if the true facts had been known.

144.   The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VII
### Fraud

145.   Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

146.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

147.   As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the Vimeo Subscriptions and their associated automatic renewal terms, including terms regarding Defendant's cancellation policy and billing practices and policies.  These misrepresentations and omissions were made by Defendant with knowledge of their falsehood.

148.   The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Vimeo Subscriptions.

149.   The fraudulent actions of Defendant caused damage to Plaintiff and the members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pollock, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.   For an order certifying the Class and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.   For an order declaring Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.   For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1

Dated: April 4, 2023

Respectfully submitted,

2

3

**BURSOR & FISHER, P.A.**

4

By: _____ */s/ Neal J. Deckant* _____

5

Neal J. Deckant (State Bar No. 322946)

6

Julia K. Venditti (State Bar No. 332688)
1990 North California Boulevard, Suite 940

7

Walnut Creek, CA  94596

8

Telephone:  (925) 300-4455
Facsimile:   (925) 407-2700

9

Email: ndeckant@bursor.com

10

jvenditti@bursor.com

11

**BURSOR & FISHER, P.A.**

12

Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue

13

New York, NY  10019

14

Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700

15

Email: fklorczyk@bursor.com

16

**GUCOVSCHI ROZENSHTEYN, PLLC.**

17

Adrian Gucovschi (*pro hac vice* forthcoming)

18

630 Fifth Avenue, Suite 2000
New York, NY 10111

19

Telephone: (212) 884-4230

20

Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

21

22

*Attorneys for Plaintiff and the Putative Class*

23

24

25

26

27

28

65

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Neal J. Deckant, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Psalm Pollock in this action.  Plaintiff Psalm Pollock alleges that she is a citizen of California who resides in San Marcos, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that Defendant Vimeo, Inc., regularly does business in the Southern District of California, and a substantial portion of the events alleged in the Complaint, including the same misrepresentations, omissions, and injures as alleged herein, have occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California, this 4th day of April, 2023.

                                        _/s/ Neal J. Deckant_____
                                           Neal J. Deckant

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED